# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARY P. MCANDREW, | : | No. 3:13cv1926 |
| Plaintiff | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| DEUTSCHE BANK NATIONAL | : | |
| TRUST COMPANY and | : | |
| AMERICAN HOME MORTGAGE | : | |
| SERVICING, INC., | : | |
| Defendants | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court is Defendants Deutsche Bank National Trust Company (hereinafter "Deutsche Bank") and American Home Mortgage Servicing, Inc.'s[1] (hereinafter "AHMSI") motion to dismiss Plaintiff Mary P. Mcandrew's (hereinafter "plaintiff") complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 4). The matter is fully briefed and ripe for disposition. For the following reasons, the court will grant defendants' motion to dismiss.

## BACKGROUND

On September 30, 2005, in consideration of a loan in the principal amount of $93,500.00, plaintiff executed a mortgage with Ameriquest

---

[1] American Home Mortgage Servicing, Inc. is now known as Homeward Residential, Inc.

Mortgage Company (hereinafter "Ameriquest") on property located at 28 Birch Street, Wilkes-Barre, Pennsylvania 18702 (hereinafter "the property"). (Doc. 1, Ex. 1, Compl. (hereinafter "Compl.") ¶ 4). In February 2009, the mortgage was assigned to Deutsche Bank as trustee for Ameriquest. (Id. ¶ 5). Deutsche Bank then employed AHMSI to service plaintiff's loan. (Id. ¶ 7).

Subsequent to the assignment of plaintiff's mortgage, AHMSI attempted to collect escrow payments for taxes and insurance on the property from plaintiff. (Id. ¶ 8). Once contacted, plaintiff advised AHMSI that she did not owe any back taxes or insurance. (Id. ¶¶ 11, 32). Specifically, on five separate occasions, plaintiff mailed copies of her insurance coverage to notify AHMSI that they had improperly charged her escrow payments for insurance and taxes. (Id. ¶¶ 11, 22). Plaintiff maintains that AHMSI received each of her notices but continued seeking escrow payments. (Id. ¶¶ 22, 32). Additionally, plaintiff requested AHMSI provide her with proof of insurance and tax payments owed. (Id. ¶ 23). AHMSI, however, failed to provide this documentary proof to plaintiff. (Id.). Regardless of AHMSI's failure to substantiate their claims, plaintiff continued to make the requested escrow payments. (Id. ¶ 12).

On October 18, 2011, AHMSI sent a certified pre-foreclosure notice to

2

plaintiff informing her that her loan was in default for failing to make monthly mortgage payments for the months of July through October 2011. (Doc. 5-1, Ex. E, Def.'s Br. in Supp.).[2] The letter stated the amount that plaintiff must pay to cure default was $3,187.45. (Compl. ¶ 26). In response, plaintiff requested information regarding the amount of money that would bring the mortgage current from AHMSI. (Id. ¶ 13). AHMSI provided plaintiff written notice that a payment in the amount of $5,134.90 by December 1, 2011 would bring the mortgage current. (Id.)

On November 26, 2011, plaintiff sent AHMSI a certified check in the amount of $5,134.90. (Id. ¶ 14). In December 2011, the check was returned to plaintiff. (Id. ¶ 15). When plaintiff contacted AHMSI to inquire as to why the check was returned, AHMSI confirmed that they had made a mistake regarding plaintiff's insurance coverage and returned the check accordingly. (Id.)

In 2012, AHMSI again requested two additional checks from plaintiff to cover alleged escrow tax payments owed on the property and plaintiff sent the two checks as directed. (Id. ¶¶ 16-17). Later in 2012, AHMSI again returned both checks to plaintiff. (Id. ¶ 18). While this dispute was ongoing, defendants

---

[2] Plaintiff references this notice in the complaint (Id. ¶ 26) as an exhibit attached to Deutsche Bank's complaint in their related mortgage foreclosure action against plaintiff, filed in Luzerne County, PA.

3

continued to report negatively to plaintiff's credit agencies claiming that plaintiff's loan was in default, which adversely impacted her credit rating and ability to borrow. (Id. ¶ 19).

In February of 2012, plaintiff requested a payoff amount from Deutsche Bank as of February 29, 2012. (Id. ¶ 20). Plaintiff asserts that Deutsche Bank never provided her with a payoff amount. (Id. ¶ 21). Plaintiff spoke with an employee of AHMSI regarding her requested payoff and the improper charges that plaintiff paid as a result of AHMSI's alleged mistake. (Id. ¶ 25). The employee of AHMSI indicated to plaintiff that she would get a payoff and that the amount would exclude charges that plaintiff paid as a result of AHMSI's error. (Id.) Deutsche Bank or AHMSI, however, failed to provide a payoff amount to plaintiff. (Id.) Plaintiff contends that both Deutsche Bank and AHMSI (collectively "defendants") failed to correct the ongoing problems which included failing to properly respond to her information related inquiries, failing to provide accurate written responses to her requests in a timely manner, and improper collection of escrow payments. (Id. ¶¶ 28, 29, 33).

Based upon these facts, plaintiff filed a three-count complaint in the Luzerne County Court of Common Pleas. (Doc. 1, Notice of Removal ¶ 1). The complaint asserts the following causes of action: Count One, violations of

12 U.S.C. § 2605(e) (hereinafter "section 2605(e)") and 12 U.S.C. § 2609 (hereinafter "section 2609") of the Real Estate Settlement Procedures Act (hereinafter "RESPA"), 12 U.S.C. §§ 2601-2617, against Deutsche Bank; Count Two, violation of section 2609 against AHMSI; Count Three, violations of the Fair Debt Collection Practices Act (hereinafter "FDCPA"), 15 U.S.C. § 1692, *et. seq.*, and the Pennsylvania Fair Debt Collection Practices Act, 73 PA. CONS. STAT. § 2270, against AHMSI. Plaintiff seeks various types of damages including, *inter alia*, compensatory damages, statutory penalties and attorney's fees.

The defendants filed a notice of removal, bringing the case to this court on July 17, 2013. (Doc. 1, Notice of Removal). Defendants then filed a motion to dismiss plaintiff's complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Doc. 4). The parties have briefed their respective positions, bringing the case to its present posture.

**Jurisdiction**

Plaintiff asserts claims under the RESPA and the FDCPA. (Id. ¶¶ 28, 29, 33, 45). The court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, which provides that '[t]he district court shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United

5

States." The court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the plaintiff's state law claim under the Pennsylvania Fair Debt Collection Practices Act, 73 PA. CONS. STAT. § 2270, because it is so closely related to plaintiff's federal FDCPA and RESPA claims that it forms part of the same case or controversy under Article III of the United States Constitution.

**Standard of Review**

Defendants bring this motion pursuant to Federal Rules of Civil Procedure 12(b)(6). When a 12(b)(6) motion is filed, the sufficiency of the allegations in the complaint are tested. All well-pleaded allegations of the complaint must be viewed as true and in the light most favorable to the non-movant to determine whether, "'under any reasonable reading of the pleadings, the plaintiff may be entitled to relief.'" Colburn v. Upper Darby Twp., 838 F.2d 663, 665-66 (3d Cir. 1988) (quoting Estate of Bailey by Oare v. Cnty. of York, 768 F.2d 503, 506 (3d Cir. 1985)). The plaintiff must describe "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' [each] necessary element" of the claims alleged in the complaint. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Moreover, the plaintiff must allege facts that "justify moving the case beyond the pleadings to the next stage of

litigation." Id. at 234-35.  In evaluating the sufficiency of a complaint the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citations omitted).  The court does not have to accept legal conclusions or unwarranted factual inferences.  See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)).

The federal rules require only that plaintiff provide "a short and plain statement of the claim showing that the pleader is entitled to relief", a standard which "does not require 'detailed factual allegations,'" but a plaintiff must make "'a showing, rather than a blanket assertion, of entitlement to relief' that rises 'above the speculative level.'"  McTernan v. City of York, 564 F.3d 636, 646 (3d Cir. 2009) (quoting Twombly, 550 U.S. at 555-56).  The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  Such "facial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly,

550 U.S. at 556). "[T]he factual detail in a complaint [cannot be] so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8." Phillips, 515 F.3d at 232 (citation omitted).

The Supreme Court has counseled that a court examining a motion to dismiss should, "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. Next, the court should make a context-specific inquiry into the "factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." Id. at 681.

**Discussion**

Plaintiff's complaint asserts causes of action under RESPA and the FDCPA. RESPA is a consumer protection statute that regulates the real estate settlement process, including servicing of loans and assignment of those loans, and imposes duties on lenders and loan servicers. 12 U.S.C. § 2601 (Congressional findings). The FDCPA is a consumer protection statute that prohibits the use of abusive, deceptive, and unfair debt collection practices by debt collectors. 15 U.S.C. § 1692(a). Defendants seek the dismissal of all three counts of plaintiff's complaint on the following grounds: 1) Plaintiff cannot maintain a section 2605(e) claim against the loan holder, Deutsche Bank; 2)

8

Plaintiff's section 2609 claims should be dismissed because a private right of action does not exist under section 2609; and 3) Count III should be dismissed because AHMSI is not a debt collector pursuant to the FDCPA. The court addresses these issues in turn.

A. **Plaintiff's Section 2605(e) Claim Is Not Actionable Against Defendant Deutsche Bank, The Loan Holder**

RESPA provides certain duties for loan servicers. Count I of the complaint alleges Deutsche Bank violated these duties. Deutsche Bank moves to dismiss Count I on the basis that it is neither a loan servicer nor a loan holder acting as a loan servicer pursuant to 12 U.S.C. § 2605(e).[3] Plaintiff counters

---

[3]Section 2605(e) governs the duties of the loan *servicer* and provides:
  (e) Duty of loan servicer to respond to borrower inquiries
(1) Notice of receipt of inquiry
(A) In general
If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.
　　　　*　　　　*　　　　*

(2) Action with respect to inquiry
Not later than 60 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if

9

that the provisions of 12 U.S.C. § 2605(e) are not limited to loan servicers and apply equally to lenders such as Deutsche Bank. After careful consideration, the court agrees with Deutsche Bank.

RESPA defines "servicer" as "the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)." 12 U.S.C. § 2605(i)(2)-(3).[4] Deutsche Bank contends it owns plaintiff's loan, but it did not **service** the loan. Plaintiff argues that a lender like Deutsche Bank can be both a loan holder and a loan servicer for purposes of a section 2605(e) violation.

Deutsche Bank does not dispute that, generally, a lender can also be a loan servicer under section 2605(e). See Dahl v. AmeriQuest Mortg. Co.,954 A.2d 588, 594-95 (Pa. Super. Ct. 2008) (stating that a lender may be subject to

---

> applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall . . . .

12 U.S.C. § 2605(e).

> [4] Under RESPA, "servicing" is defined as:
> receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts ..., and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

12 U.S.C. § 2605(i)(3).

10

suit for violations of section 2605(e) if they also acted as the loan servicer). RESPA states, however, that only one (1) entity may act as the loan servicer for purposes of a section 2605(e) violation. Thus, where one entity is acting as the servicer of a mortgage loan, a separate entity cannot also act as the servicer. Lingad v. Indymac Fed. Bank, 682 F. Supp. 2d 1142, 1151 (E.D. Cal. 2010). Accordingly, it is not Deutsche Bank's status as "lender" that determines whether it is subject to liability under section 2605(e). Rather, the issue is whether Deutsche Bank serviced plaintiff's loan.

A careful review of plaintiff's complaint establishes that AHMSI was the loan servicer. Plaintiff identifies AHMSI as the entity which "began attempting to collect escrow payments from the borrower." (Id. ¶ 8). Moreover, plaintiff references AHMSI as the entity she contacted for questions regarding payment of her loan and the entity to whom she sent payment. (Id. ¶¶ 11, 12, 14-17). Thus, plaintiff's allegations demonstrate that AHMSI was the servicer of the loan. (See id. ¶ 7). Plaintiff alleges no facts to support the conclusion that Deutsche Bank was the loan servicer. Because AHMSI serviced plaintiff's loan, Deutsche Bank could not also act as the servicer. See Lingad, F. Supp. 2d at 1151. Accordingly, the court will grant Deutsche Bank's motion to

11

dismiss plaintiff's section 2605(e) claim with prejudice.[5]

## B. A Private Right of Action Does Not Exist Under Section 2609

Defendants next argue that plaintiff's section 2609 claims should be dismissed because a private right of action does not exist under section 2609, the section of RESPA that governs escrow fee collection. Plaintiff argues that given RESPA's ameliorative purpose a cause of action should exist. After careful review, we agree with the defendants.

The majority of Circuit Courts of Appeal have determined that a private right of action does not exist for violations of section 2609. See Litton Mort. Co., 50 F.3d at 1298 (observing that no private right of action exists under section 2609 of RESPA); Hardy v. Regions Mortg., Inc., 449 F.3d 1357 (11th Cir. 2006) (same); Allison v. Liberty Sav., 695 F.2d 1086 (7th Cir. 1982) (same); but see Vega v. First Fed. Sav. & Loan Ass'n, 622 F.2d 918 (6th Cir. 1980) (finding that RESPA creates a private right of action for violation of section 2609 notwithstanding the absence of an express provision).

---

[5] The court will deny this claim with prejudice as an amendment would be futile. See Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) (holding that district courts must permit a curative amendment within a set period of time unless such an amendment would be inequitable or futile).

12

Although the Third Circuit Court of Appeals has yet to address this issue, district courts within the Third Circuit have determined that section 2609 fails to contain a private right of action. See Sarsfield v. Citimortgage, Inc., 667 F. Supp. 2d 461, 467 (M.D. Pa. 2009); Kasolas v. Urban Trust Bank, No. 13-3798, 2013 WL 3223380, at *2 (D.N.J. June 25, 2013). As noted by the Sarsfield court, it is not logical that "Congress would have made explicit a private right of action in the sections immediately preceding § 2609, but simply implied a private right of action for the remainder of the statute." Sarsfield, 667 F. Supp. 2d at 467.

In the instant case, plaintiff argues that, given the ameliorative purpose of RESPA, a private right of action under section 2609 should be implied to protect borrowers. Ameliorative statutes, however, do not require the implication of a private cause of action absent express congressional intent. See Touche Ross & Co. v. Redington, 442 U.S. 560, 578 (1979); Cannon v. Univ. of Chi., 441 U.S. 677, 690-693 (1979); Sec. Investor Prot. Corp. v. Barbour, 421 U.S. 412, 421 (1975). Additionally, plaintiff cites no authority to support her position.

In determining whether a private cause of action exists, the Supreme Court has articulated the following four-part test: (1) whether the plaintiff is a member of the class for whose special benefit the statute was enacted; (2)

13

whether there is an indication of legislative intent to create or deny an implied remedy; (3) whether a private cause of action is consistent with the underlying purposes of the legislative scheme; and (4) whether the cause of action is one traditionally relegated to state law. Cort v. Ash, 422 U.S. 66, 78 (1975). Most important among these factors has been the second prong, that is, the intent of Congress. Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis, 444 U.S. 11, 23-24 (1979); Touche Ross & Co. v. Redington, *supra*, at 568 (1979).

Applying this test, courts have concluded that no private right of action exists under section 2609 because that section, unlike other sections of RESPA, is silent regarding private remedies and such silence indicates that Congress did not intend to provide a private remedy. See Litton Mortg. Co., 50 F.3d at 1301. Most notably, the Litton court found that Congress amended the escrow section of RESPA after the Circuit Courts of Appeals had decided that no private right of action existed and only provided for an administrative remedy under section 2609(c). Id.

Additionally, RESPA specifically provides for a three year statute of limitations in any action brought in federal court for a violation of sections 2605, 2607, and 2608 of RESPA. See 12 U.S.C. § 2614. Had Congress intended to create a private right of action under section 2609, that section

14

also would have been included in the statute of limitations section. Moreover, sections 2607 and 2608 of RESPA provide for treble damages and attorneys fees, whereas section 2609 has no such provision with regard to damages. The only remedy contemplated under section 2609 provides for administrative enforcement by the Federal Housing and Urban Development Agency. 12 U.S.C.A. § 2609. As such, the court finds that section 2609 fails to contain a private right of action. Thus, plaintiff's section 2609 claims against defendants will be dismissed with prejudice.

**C.    AHMSI Is Not A Debt Collector Under The FDCPA (Count III)**

Count III of the complaint asserts a cause of action against AHMSI under the FDCPA. Defendants argue that Count III should be dismissed because the FDCPA is only applicable to "debt collectors" which, as defined by the FDCPA, does not include loan servicers such as AHMSI.[6] Plaintiff asserts that AHMSI is a business entity engaged in the business of collecting debts in the Commonwealth of Pennsylvania and, as such, is a debt collector pursuant to

---

[6] The FDCPA broadly defines a "debt collector" as one who attempts to collect debts "owed or due or asserted to be owed or due another." See 15 U.S.C. § 1692(a)(6). Conversely, a "creditor" is defined as one who "offers or extends to offer credit creating a debt or to whom a debt is owed." 15 U.S.C. § 1692a(4). Thus, creditors are those "who collect in their own name" as opposed to debt collectors who are third party collectors of past due debts.

15

the FDCPA. (Compl. ¶¶ 40-41). Plaintiff alleges that on numerous occasions throughout the year 2009, AHMSI contacted her by both mail and telephone attempting to collect escrow payments on her mortgage loan. (Id. ¶ 42). Plaintiff avers that she sent multiple letters to AHMSI informing them that the payments that they were attempting to collect were not due and owing. (Id. ¶ 22). As such, plaintiff asserts that AHMSI was aware that the debts were not due but nevertheless persisted in their attempts to collect. (Id. ¶ 44). She contends that AHMSI's actions violate the FDCPA, specifically 15 U.S.C. 1692(e) (1) (2) (which prohibits debt collectors from using any "false, deceptive, or misleading representation or means in connection with the collection of any debt."), and 1692f (1) (which prohibits debt collectors from making use of "unfair or unconscionable means to collect or attempt to collect any debt").

In the instant case, plaintiff has not made sufficient allegations that AHMSI's role was more akin to "debt collector" than "loan servicer." Plaintiff generally alleges in her complaint that AHMSI is a business entity engaged in the collection of debts. (Compl. ¶ 40). In support of her contention, plaintiff asserts that AHMSI "sent letters attempting to collect debts" to her residence. (Id. at ¶ 42). Plaintiff concludes that these actions qualify AHMSI as a "debt collector" pursuant to the FDCPA. (Id. at ¶ 41). We must accept as true all

16

factual allegations of the complaint. These allegations, however, are not factual allegations, but rather, conclusions of law. Thus, we do not accept them as true. See Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009) (explaining that when deciding a 12(b)(6) motion "[t]he District Court must accept all of the complaint's well pleaded facts as true, but may disregard any legal conclusions.").

Therefore, it is critical that the actions that AHMSI engaged in with regard to plaintiff's loan be evaluated. We must know whether AHMSI was servicing a current loan or demanding payment on a defaulted loan. Plaintiff states in the complaint that AHMSI began to "service the loan" in 2009, that AHMSI, "the servicing company," charged her for escrow and insurance, and that AHMSI fielded her calls regarding the status of her insurance coverage. (Id. ¶¶ 7-10). These facts indicate that AHMSI was engaged in the business of servicing plaintiff's loan and not in the collection of debts. The law provides that: "mortgage servicing companies are not debt collectors and are statutorily exempt from liability under the FDCPA." Scott v. Wells Fargo Home Mortg., Inc., 326 F. Supp. 2d 709, 718 (E.D. Va. 2003); See also 15 U.S.C. § 1692a(4)(6)(F). Additionally, the Court of Appeals for the Third Circuit has consistently held that the FDCPA's provisions "generally apply only to debt collectors." Pollice v. Nat'l Tax Funding, L.P., 225 F.3d 379, 403 (3d Cir.

17

2000).

A loan servicer such as AHMSI cannot be a "debt collector" under the FDCPA unless the debt was in default when it was obtained by the servicer. 15 U.S.C § 1692(a)(6)(F). Plaintiff's complaint fails to allege that plaintiff's loan was in default when AHMSI began servicing the loan. On the contrary, AHMSI began servicing plaintiff's loan before the loan entered default. *(*Id. ¶¶ 7-8).[7] As such, we find that plaintiff has failed to adequately allege that her mortgage loan was in default at the time AHMSI obtained the servicing rights; therefore, count III will be dismissed with prejudice. (See Taggart v. Wells Fargo Mortg. Inc., No. 10-cv-843, 2012 WL 4462787, at *4 (E.D. Pa. Sept. 27, 2012) (stating that when the plaintiff failed to allege that the mortgage was in default at the time the servicer obtained the servicing rights, the servicer was not a debt collector and the FDCPA was inapplicable); Prince v. NCO, 346 F. Supp. 2d 744, 747 (E.D. Pa. 2004) (holding that servicing company is not a "debt collector" under the FDCPA if plaintiff's account was not in default at the time the servicer obtained the debt); Sponaugle v. First Union, 40 Fed. Appx. 715, 717 n. 2 (3d Cir. 2002) (finding that a mortgage servicing company seeking to

---

[7] Plaintiff also references (Compl. ¶ 26) the certified pre-foreclosure notice (Doc. 5-1, Ex. E, letter dated Oct. 18, 2011) that AHMSI sent to plaintiff, indicating that her loan first came into default on July 1, 2011, over two years after AHMSI began servicing plaintiff's loan. (Id. ¶ 7).

18

collect on a debt was not a "debt collector" under the FDCPA because the loan was not in default at the time it was obtained).

**Conclusion**

For the reasons set forth above, defendants' motion to dismiss all three counts of plaintiff's complaint will be granted. An appropriate order follows.